UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL PRODUCE DISTRIBUTION CO., LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>GEIGER'S LONG VALLEY MARKET, LLC, et al.,<br><br>       Defendants. | Case No. 23-cv-01794-VC<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

      The motion to dismiss is denied. This ruling assumes the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.

I

      The amended complaint makes it clear that there is a single plaintiff in this case: General Produce Distribution Company, a Delaware LLC. That entity had been a California partnership, General Produce Company, until April 14, 2023, when it was converted into its current form. The defendants contend that this conversion renders the complaint defective in a variety of ways, but they are wrong.

      First, the defendants contend the plaintiff lacks standing because it was the predecessor entity that was "injured" by delivering food and not being paid. But if the plaintiff is entitled to be paid as a trust beneficiary, then it is currently being injured by defendants' withholding the money it is due. The defendants also fault the complaint for failing to allege an assignment of rights or a transfer of the PACA claim between the partnership and the LLC. But under Delaware law, after a conversion, the new entity retains all rights and causes of action of the old entity—

there is no need for a transfer or assignment. 6 Del. C. § 18-214(f).

Second, the defendants note that the plaintiff no longer has a valid PACA license, since the partnership's license wasn't updated after the conversion to reflect the change of name and corporate status. 7 C.F.R. § 46.11, 46.13. This means, according to the defendants, that the partnership can no longer pursue its PACA claims against the defendants. That makes no sense, because the PACA claims arose before the conversion. Perhaps if the new entity brought a PACA claim that arose after the conversion, based on a transaction that took place after the conversion, it would have a problem based on the alleged failure to update the license. But there is no reason to think that the corporate conversion wipes out existing entitlements.

Nothing in the statute or the regulations interpreting it suggest the odd result promoted by the defendants. The trust provision describes liability as "to the person or persons injured." 7 U.S.C. § 499e(a). It also states that "receivables and proceeds . . . shall be held . . . in trust for the benefit of all unpaid suppliers or sellers . . . until full payment." 7 U.S.C. § 499e(c)(2). There is no mention of maintaining a valid license, let alone a valid license in the same name as the company that delivered the produce. And the regulation describing the license requirement states that "[n]o person shall at any time carry on the business of commission merchant, dealer, or broker without a license that is valid and effective at such time." 7 C.F.R. § 46.3(a). It does not state a requirement that such parties maintain valid licenses to be repaid for business already conducted. Indeed, the regulation regarding trust benefits states that "[p]articipants who preserve their rights to benefits . . . remain beneficiaries until they are paid in full." 7 C.F.R. § 46.46(c)(1). Thus, so long as the rights were preserved according to the statute, the plaintiff is the holder of those rights and is entitled to bring an action to enforce the trust provision—there is no additional requirement that it continue to have a valid license.[1]

That leads to the defendants' final argument about the conversion. PACA requires that

---

[1] The defendants cite *Combined Professional Resources, Inc. v. Limeco, Inc.*, 801 F.Supp. 664, 670 (S.D. Fla. 1992), for the proposition that the conversion extinguished the right to pursue a claim that had already arisen because the right to payment travels with the license, but that case says no such thing.

sellers give written notice of their intent to preserve the trust benefits within a certain amount of time. 7 U.S.C. § 499(e)(3). Licensees are entitled to give such notice by putting particular language on invoices. 7 U.S.C. § 499(e)(4). The plaintiff alleges that it included the statutory notice language on its invoices, and the defendants do not contest this. Instead, the defendants argue that because the license is now invalid, the plaintiff needed to have given written notice as required for a nonlicensee, and since it did not do so, no benefits have been preserved. This is just another spin on the same argument, and again there is no support for it. There is no reason to think that the termination of a license retroactively invalidates any prior notices given pursuant to that license. As the statute and regulations plainly state, if a seller properly preserves its rights, then it is entitled to be paid. And that is what the plaintiff alleges.

II

The defendants make two additional arguments for dismissal. First, they argue that the invoices attached to the complaint as exhibits do not show that all produce shipments were signed for by someone with authority to receive them, and thus the shipments were not "accepted" according to the terms of the statute. But the regulations define acceptance to include "[a]n act by the consignee signifying acceptance of the shipment including . . . unloading," which is alleged and unchallenged. 7 C.F.R. § 46.2(dd). Moreover, any uncertainty regarding whether the invoices provide sufficient evidence of acceptance is a question of fact not appropriate for resolution at the motion to dismiss stage.

Second, the defendants argue that the goods in question did not move in interstate commerce as required by PACA. This is drawn from the invoices stating that 821 of the shipments originated in California while 979 originated out of state or in foreign commerce. As the plaintiff points out, the fact that shipments originated in California is not inconsistent with the notion that they moved outside of California at some point. More significantly, PACA's interstate commerce requirement has been interpreted to cover circumstances "where the commodities involved are the type typically sold in interstate commerce" and where the seller involved is "the type that Congress intended to protect by implementing PACA." *In re Southland*

*& Keystone*, 132 B.R. 632, 640 (9th Cir. B.A.P. 1991); *see also Weeks v. Fresh-Pic Produce Co, Inc.*, 2012 WL 1815648 (S.D. Cal. 2012) (adopting the same standard). The defendants provide no argument for requiring "a majority of the produce at issue" to have itself travelled in interstate commerce. Moreover, the PACA provision that the defendants quote defines the statute as protecting "commission merchants," including "any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity." 7 C.F.R. § 499a(b)(5). The invoices themselves reflect that the plaintiff is in the business of moving produce across state lines. Thus, the plaintiffs adequately allege the interstate commerce element of their claim.

### III

The motion to dismiss is denied. An answer is due within 14 days of this ruling.

**IT IS SO ORDERED.**

Dated: August 21, 2023

VINCE CHHABRIA
United States District Judge